Frank Zorrilla, Secretario del Trabajo de Puerto Rico, etc., demandante y recurrido, *v.* Antilles Wood Industries, Inc., demandada y recurrente.

*Número:* R-68-161        *Resuelto:* 21 de mayo de 1969

*Dubón & Dubón,* abogados de la recurrente; *Manuel Janer Mendía* y *Rafael A. Marzand Robles,* abogados del recurrido.

350

El Juez Asociado Señor Rigau emitió la opinión del Tribunal.

Lo que aquí se plantea es si el trabajo realizado por los querellantes está cubierto por el Decreto Mandatorio Núm. 25 aplicable a la industria de madera y sus productos y a la de muebles, puertas y ventanas de metal o si dicho trabajo está cubierto por el Decreto Mandatorio Núm. 44 aplicable a la industria de la construcción.

Las partes, mediante estipulación formal escrita, estipularon ante el Tribunal Superior lo siguiente:

(a) La querellada es una corporación doméstica y se dedica a la manufactura e instalación de gabinetes de cocina.

(b) La actividad principal de la querellada consiste en la manufactura en masa de dichos gabinetes y en la instalación de los mismos en proyectos de construcción de gran escala. En los contratos de venta de ese equipo la querellada incluye en el precio la instalación de los gabinetes en las casas o locales que el cliente indica.

(c) En la fábrica de la querellada se hacen las operaciones de corte y pintura de dichos gabinetes y el ensamblaje e instalación de los mismos se hace en la casa o local del cliente. Los gabinetes se instalan fijándolos a la pared con maderos, clavos y tornillos y con angulares de hierro, según sea el caso. Al instalarlos se hacen las operaciones de ajuste necesarias pues no siempre los planos y las cocinas construidas concuerdan exactamente.

(d) La estructura fundamental de los gabinetes está hecha de madera pero también se utilizan en su manufactura e instalación plástico, aluminio y herrajes.

(e) Que los obreros reclamantes trabajaron en las operaciones de ensamblaje e instalación de gabinetes de cocina en los proyectos que tenía la querellada bajo contrato en las fechas indicadas en el Exhibit A de la querella y que se les pagó un jornal por hora a tenor con el Decreto Mandatorio Núm. 25.

(f) Que existe una controversia de buena fe entre los querellantes y la querellada con respecto a qué Decreto Mandatorio, si alguno, es aplicable a los mencionados trabajos realizados por los querellantes. Los querellantes entienden que el Decreto aplicable es el Núm. 44 y la querellada entiende que el Decreto aplicable es el Núm. 25.

(g) También estipularon las partes "que de ser aplicable el Decreto número 25 a que nos hemos referido anteriormente la querellada no vendría obligada al pago de la diferencia en salarios que se alega en la presente reclamación; asimismo acuerdan las partes que de ser aplicable el Decreto número 44 la querellada adeudaría a los obreros reclamantes la suma que se reclama en la querella."

Los salarios reclamados se devengaron por concepto de trabajo realizado entre el 6 de septiembre d 1960 y el 31 de marzo de 1963. Por lo tanto, debemos recurrir a las disposiciones de los decretos vigentes durante ese período. Son éstos el Decreto Mandatorio Núm. 25, Primera Revisión (1959) y Segunda Revisión (1961), y el Decreto Mandatorio Núm. 44, Primera Revisión (1960) y Segunda Revisión (1962).

Un Decreto Mandatorio anterior, el Núm. 14, aplicable a la industria de muebles y otros productos de madera definía dicha industria en la forma siguiente:

"La Industria de Muebles y Otros Productos de Madera comprende los procesos de diseño, fabricación, *montaje*, alteración y reparación de muebles de madera, metal, mimbre, maguey o cualquier otro material, y de otros productos de madera." (Énfasis nuestro.)

Dicho Decreto no distinguía entre el montaje (*assembly*) que se llevaba a cabo en la propia fábrica y el que se realizaba en las cocinas o locales en donde estos muebles se instalaban. Casi seguramente bajo aquel Decreto Núm. 14 la recurrente hubiese estado en lo cierto.

Sin embargo, cuando la Junta de Salario Mínimo promulgó el Decreto Núm. 25 definió en forma distinta la industria de madera. La definió en la forma siguiente:

"La Industria de Madera y sus Productos; y de Muebles, Puertas y Ventanas de Metal: comprenderá las actividades propias de aserraderos y de talleres de cepillado y laminado de madera ('planing and plywood mills') y la manufactura de todo producto hecho total o principalmente de madera o de materiales relacionados, tales como, mimbre, bambú, ratán, pajilla, corcho y maguey.

Comprenderá también la manufactura de los siguientes productos hechos total o principalmente de metal: muebles, puertas, ventanas y marcos. . . ."

▆ Nótese que el Decreto Núm. 25 no incluyó el montaje en la nueva definición. Tampoco se incluyó en la segunda revisión del mismo Decreto. Desde luego, no podemos presumir que esto se debió a una inadvertencia. Los Decretos sobre salarios son documentos técnicos que tienen que ser redactados con precisión. Precisamente, la obscuridad que de primera impresión se advierte en los reglamentos administrativos es debida a la exactitud y al detalle que con frecuencia deben tener. Frente a la letra del Decreto Núm. 25 puede decirse que el montaje de esos muebles hecho en la propia factoría constituye un ensamblaje y es parte del proceso de manufactura. Pero el montaje y la instalación que se hacen en el edificio en donde son instalados, es parte del proceso de construcción y terminación de la obra. Los gabinetes pueden ser comprados en la factoría e instalados en la obra por otra persona. Una consideración adicional nos lleva inevitablemente a la conclusión de que la instalación está cubierta por el Decreto Núm. 44. Ésta es que el propio Decreto Núm. 25 (en su primera y segunda revisiones) expresamente dispone que no incluye las actividades cubiertas por el Decreto Núm. 44 y dicho Decreto Núm. 44, de esa misma Junta, dispone que la industria de la construcción incluye "la acopladura o

instalación en el lugar de la obra en construcción de cualquier maquinaria o aparato."

■ Este Tribunal ante situaciones similares, interpretando distintos Decretos de salario mínimo, ha establecido consistentemente la norma de que lo que determina cómo ha de caracterizarse el trabajo que hace un obrero no es el trabajo o negocio a que se dedica su patrono sino aquel trabajo que real y efectivamente el obrero lleva a cabo. *Sierra Núñez v. Const. Equipment Corp.*, 90 D.P.R. 141, 147 (1964); *Srio. del Trab. v. Cement. Cat. Porta Coeli*, 92 D.P.R. 527, 529 (1965); *Campos de Encarnación v. Sepúlveda*, 94 D.P.R. 74, 76 (1966); y *Almodóvar v. Sucn. J. Serrallés*, 96 D.P.R. 9 (1968). En *Campos de Encarnación v. Sepúlveda*, supra, luego de citar con aprobación los casos de *Sierra Núñez v. Const. Equipment Corp.*, supra, y *Srio. del Trab. v. Cement. Cat. Porta Coeli*, supra, expresamos que "la base principal para fijar salarios mínimos es la naturaleza de la actividad que se lleva a cabo por el empleado que la ejercita, irrespectivamente de la clase de ocupación a que se dedique la empresa o patrono que lo emplea. . . ."

También dijo el Tribunal en el citado caso de *Campos v. Sepúlveda*, que "Atendido el propósito reparador de la legislación sobre salario mínimo . . . hemos adoptado como norma la de que en caso de duda sobre si un decreto es aplicable a determinada clase de empleados no debe prevalecer una interpretación restrictiva que la excluya de la protección que se intenta."

*En vista de lo anterior, se dictará sentencia confirmando la dictada en este caso por el Tribunal Superior, Sala de Bayamón, en 29 de abril de 1968, por la cual se determinó que el decreto aplicable era el Núm. 44.*

El Juez Asociado Señor Hernández Matos no intervino.